Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHAN LOLLAR, | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| PANBELA THERAPEUTICS, INC., MICHAEL T. CULLEN, JENNIFER K. SIMPSON, ART FRATAMICO, SUZANNE GAGNON, JEFF MATHIESEN, PAUL W. SCHAFFER, and ROBERT SCHEMEL, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Nathan Lollar ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.  This is an action against Panbela Therapeutics, Inc. ("Panbela" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9,

1

in connection with the proposed merger (the "Proposed Transaction") of Panbela and Cancer Prevention Pharmaceuticals, Inc. ("Cancer Prevention" or "CPP").

2. On April 29, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

3. The Proxy Statement, which recommends that Panbela shareholders vote in favor of, among other things, the issuance of Panbela common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) the financial analyses performed by Panbela's financial advisor, Canaccord Genuity LLC ("Canaccord"), in connection with its fairness opinion; and (ii) potential conflicts of interest involving Company insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of Panbela common stock.

10. Defendant Panbela is a clinical-stage biopharmaceutical company that focuses on developing disruptive therapeutics for the treatment of patients with cancer. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "PBLA."

11. Defendant Michael T. Cullen ("Cullen") is Chairman of the Board of the Company.

12. Defendant Jennifer K. Simpson ("Simpson") is President, Chief Executive Officer, and a director of the Company.

13. Defendant Art Fratamico ("Fratamico") is a director of the Company.

14. Defendant Suzanne Gagnon ("Gagnon") is a director of the Company.

15. Defendant Jeff Mathiesen ("Mathiesen") is a director of the Company.

16. Defendant Paul W. Schaffer ("Schaffer") is a director of the Company.

17. Defendant Robert Schemel ("Schemel") is a director of the Company.

18. Defendants Cullen, Simpson, Fratamico, Gagnon, Mathiesen, Schaffer, and Schemel are collectively referred to herein as the "Individual Defendants."

19. Defendants Panbela and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

20. On February 22, 2022, Panbela announced that it had entered into a definitive agreement to acquire Cancer Prevention for a combination of stock and future milestone payments. The press release announcing the Proposed Transaction states, in pertinent part:

> **Panbela Therapeutics, Inc. to Acquire Cancer Prevention Pharmaceuticals, Inc.**
>
> February 22, 2022 08:00 ET | Source: Panbela Therapeutics, Inc.
>
> - Creates late-stage, diversified pipeline that uses a multi-targeted approach to reset dysregulated biology to address considerable unmet needs
> - Combined pipeline extends from pre-clinical to registration studies, with near-term clinical and regulatory milestones
> - Acquired lead asset will begin a fully-funded registration trial anticipated to start by year-end
>
> **MINNEAPOLIS, Feb. 22, 2022 (GLOBE NEWSWIRE) -- Panbela Therapeutics, Inc.** (Nasdaq: PBLA), a clinical stage company developing disruptive therapeutics for the treatment of patients with cancer, today announced it has entered into a definitive agreement to acquire Cancer Prevention Pharmaceuticals, Inc. ("CPP"), a private clinical stage company developing therapeutics to reduce the risk and recurrence of cancer and rare diseases, for a combination of stock and future milestone payments.
>
> \*     \*     \*
>
> **Transaction Details**

4

Under the terms of the agreement and plan of merger, the holders of CPP's outstanding capital stock immediately prior to the merger will receive shares of common stock of Panbela upon closing of the mergers. On a pro forma and fully diluted basis, holders of Panbela common stock are expected to own approximately 59% of the post-merger holding company and holders of CPP securities, including converted indebtedness, are expected to beneficially own approximately 41% of post-merger holding company. CPP stockholders will be eligible to receive contingent payments totaling a maximum of $60 million from milestone and royalty payments associated with the potential approval and commercialization of the lead asset.

The proposed mergers have been unanimously approved by the boards of directors of each company and the stockholders of CPP. A closing is expected to occur by the second quarter of 2022, subject to approval of the issuance of securities in the transactions by Panbela's stockholders, and satisfaction of other customary closing conditions.

**Additional Information**

The combined company will be led by Jennifer Simpson, Chief Executive Officer of Panbela and will remain headquartered in Waconia, Minnesota. The board of the combined company is expected to optimize the value of this transaction and beyond and will include at least two members initially designated by CPP, CPP Chief Executive Officer, Jeff Jacob, and CPP Director, Dan Donovan.

Canaccord Genuity LLC is acting as the exclusive financial advisor to Panbela, and Faegre Drinker Biddle & Reath LLP is acting as its legal counsel. The Sage Group is acting as the exclusive financial advisor to CPP, and Blank Rome LLP is acting as its legal counsel.

**About: SBP-101**

SBP-101 is a proprietary polyamine analogue designed to induce polyamine metabolic inhibition (PMI) by exploiting an observed high affinity of the compound for pancreatic ductal adenocarcinoma and other tumors. The molecule has shown signals of tumor growth inhibition in clinical studies of US and Australian metastatic pancreatic cancer patients, demonstrating a median overall survival (OS) of 12.0 months which is not yet final, and an objective response rate (ORR) of 48%, both exceeding what is seen typically with the standard of care of gemcitabine + nab-paclitaxel suggesting potential complementary activity with the existing FDA-approved standard chemotherapy regimen. In data evaluated from clinical studies to date, SBP-101 has not shown exacerbation of bone marrow suppression and peripheral neuropathy, which can be chemotherapy-related adverse events. Serious visual adverse events have been evaluated and patients with a history of retinopathy or at risk of retinal detachment will be excluded from future SBP-101 studies. The safety data and PMI profile observed in the current Panbela sponsored clinical trial

5

provides support for continued evaluation of SBP-101 in a randomized clinical trial. For more information, please visit **https://clinicaltrials.gov/ct2/show/NCT03412799** .

**About Panbela**

Panbela Therapeutics, Inc. is a clinical-stage biopharmaceutical company developing disruptive therapeutics for patients with urgent unmet medical needs. The company's initial product candidate, SBP-101, is for the treatment of patients with metastatic pancreatic ductal adenocarcinoma, the most common type of pancreatic cancer. Panbela Therapeutics, Inc. is dedicated to treating patients with pancreatic cancer, ovarian, and exploring SBP-101's potential for efficacy in combination with other agents in other cancer indications. Further information can be found at **www.panbela.com.** Panbela Therapeutics, Inc. common stock is listed on The Nasdaq Stock Market LLC under the symbol PBLA.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21.   The Proxy Statement omits and/or misrepresents material information concerning: (i) the financial analyses performed by Canaccord in connection with its fairness opinion; and (ii) potential conflicts of interest involving Company insiders.

22.   The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Required Vote and Board Recommendation; (ii) Panbela's Reasons for the Mergers; and (iii) Opinion of Financial Advisor to Panbela.

23.   Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Stock Issuance, the Company's shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

   **1. Material Omissions Concerning Canaccord's Analyses**

24.   In connection with the Proposed Transaction, the Proxy Statement omits material

information concerning analyses performed by Canaccord.

25. With respect to Canaccord's "*Selected Public Companies Analysis*" and "*Selected Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Canaccord observed in its analyses.

26. The Proxy Statement provides that, in connection with Canaccord's fairness opinion, Canaccord: (1) reviewed "certain estimates and data relating to Panbela and CPP prepared by the management of Panbela or CPP that Canaccord Genuity was directed to utilize by Panbela in its analysis"; and (2) discussed "the prospects of Panbela and CPP" with Panbela management. The Proxy Statement, however, fails to disclose the aforementioned information relied upon by Canaccord in connection with its fairness opinion.

27. The Proxy Statement also fails to disclose the financial projections of Panbela and Cancer Prevention, even though Canaccord discussed "the prospects of Panbela and CPP" with Panbela management.

28. The valuation methods, underlying assumptions, and key inputs used by Canaccord in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Canaccord's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

29. Without the information described above, the Company's shareholders are unable to fully understand Canaccord's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

30. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

31. The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

32. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

33. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**COUNT I**
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
**Against All Defendants**

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

8

36. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

37. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

38. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or

9

indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

43. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

10

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 24, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*